IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANDREA PETERSON,

      Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES LLC, EXPERIAN
INFORMATION SOLUTIONS INC.,
and TRANS UNION, LLC,

      Defendants.

CIVIL ACTION NO.
1:16-CV-3528-WMR-LTW

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This case is presently before the Court on Motions for Summary Judgment filed by Defendants Trans Union, LLC ("Trans Union"), Equifax Information Services LLC ("Equifax"), and Experian Information Solutions, Inc.  ("Experian") (collectively, "Defendants").  (Docs. 139, 140, 141).  For the reasons explained below, the Court **RECOMMENDS** that Defendants' Motions for Summary Judgment be **GRANTED**. (Docs. 139, 140, 141).

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff filed the instant lawsuit *in forma pauperis* in September 2016, bringing claims under the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA").  The Court conducted a frivolity review pursuant to 25 U.S.C. § 1915(e)(2) and dismissed Plaintiff's FDCPA claim.  (Docs. 13 and 29).  As to Plaintiff's FCRA claims, Plaintiff first asserts that Defendants violated 15 U.S.C. § 1681e(b) by

failing to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports. (Compl. ¶ 46). Plaintiff claims that she disputed inaccurate or incomplete items on her credit reports with all three Defendants between July 2015 and September 2015. (Compl. p. 4). Plaintiff alleges that Defendants refused to add positive accounts to her credit reports and inaccurately reported accounts Plaintiff was unable to pay due to fraud. (Compl. ¶¶ 15, 52, 55, 64). Further, Plaintiff claims that Defendants violated 15 U.S.C. 1681i by failing to conduct reasonable reinvestigations to determine whether the disputed information was accurate. (Compl. ¶ 86). Plaintiff asserts that Defendants failed to modify or delete the disputed information, place conspicuous dispute notices on her credit reports, conduct reasonable reinvestigations into her fraud allegations, or provide descriptions of the procedures used and entities contacted during reinvestigations. (Compl. ¶ 86, 101). Finally, Plaintiff alleges that Defendants violated 15 U.S.C. § 1681s-2 by including accounts on her credit reports without adding her dispute statement in a conspicuous place. (Compl. ¶ 104). As relief, Plaintiff requests injunctive relief requiring Defendants to correct her credit reports, actual damages, punitive and/or statutory damages, costs and attorney's fees, an order restraining Defendants from violating the FCRA, and any further relief deemed appropriate. (Compl. p. 40).

Although Defendants filed separate summary judgment motions, the arguments they put forward are substantially similar. Defendants contend that Plaintiff's failure to demonstrate a factual inaccuracy in her credit reports is fatal to all of her FCRA

2

claims.  (Trans Union Br. ("Tr. Br."), Doc. 139-1, at 2-7; Equifax Br. ("Eq. Br."), Doc. 140-1, at 6-13; Experian Br. ("Ex. Br."), Doc. 141-1, at 7-12).  Even if Plaintiff could identify an inaccuracy, Defendants contend that her 15 U.S.C. § 1861e claims still fail because they followed reasonable procedures.  (Tr. Br. 8-12, Eq. Br. 13-16, Ex. Br. 12-15).  Additionally, Trans Union argues that it did not issue an inaccurate report to a third party.  (Tr. Br. 8).  Next, Defendants assert that Plaintiff's 15 U.S.C. § 1861i(a) claims fail because they conducted reasonable reinvestigations into Plaintiff's disputes and provided Plaintiff with a description of their reinvestigation procedures.  (Tr. Br. 12-17, Eq. Br. 16-17, Ex. Br. 15-19).  As to Plaintiff's claims under 15 U.S.C. § 1861i(c), Trans Union added Plaintiff's dispute statement to her report, Equifax did not add Plaintiff's statement because her statement did not comply with its formatting requirements, and Experian never received a dispute statement from Plaintiff.  (Tr. Br. 17, Eq. Br. 17, Ex. Br. 19).  Defendants argue Plaintiff did not suffer damages caused by their credit reporting, they did not willfully violate the FCRA, and Plaintiff does not have the right to injunctive relief under the FCRA.  (Tr. Br. 18-24, Eq. Br. 19-24, Ex. Br. 20-24).  Plaintiff did not respond to Defendants' Motions for Summary Judgment.

## I.   **FACTUAL BACKGROUND**[1]

---

[1] All facts taken directly from Trans Union's Statement of Material Facts ("Tr. SMF"), Equifax's Statement of Material Facts ("Eq. SMF"), and Experian's Statement of Material Facts ("Ex. SMF") remain undisputed.  This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party.  LR 56.1B(2), (3), NDGa.  Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine

3

Defendants are national consumer reporting agencies as defined by the Fair Credit Reporting Act. (Tr. SMF ¶ 1, Eq. SMF ¶ 1, Ex. SMF ¶ 27). Plaintiff alleges that she disputed the reporting of numerous accounts with Defendants, and those disputes were neither resolved nor investigated to her satisfaction. (See generally Compl.).

### A.   Paid-as-Agreed Accounts

#### 1.   Trans Union

On July 1, 2015, Plaintiff emailed Trans Union, stating that her credit report was incomplete and asking Trans Union to add the following accounts: three mortgages associated with properties in Maryland and Illinois; a Chase Bank account ending in 7586; and credit records with "Peoples Gas," Bloomingdales, HSBC Neiman Marcus, HSBC Saks Fifth Avenue, TD Auto Lease, Mercedes Benz Financial, Nordstrom, and MB Financial Services. (Tr. SMF ¶¶ 71-72; Kimp. Decl. ¶ 24, Ex. pp. 46-48). Plaintiff asserted that Trans Union should be reporting all of those credit records as "paid or paying as agreed" because an FAQ page on Trans Union's website dated May 10, 2010,

---

issues of material fact in order to withstand summary judgment. See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). Thus, this Court will not consider any fact, for instance, (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion. This Court will assess the admissibility of any evidence presented through affidavits or any other method and the objections thereto as part of its assessment of Defendants' Motions for Summary Judgment. The Court will then rule on the evidence implicitly or explicitly in the consideration of the motion. See Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 595 F. Supp. 1442, 1443 (N.D. Ga. 1984), rev'd on other grounds, 788 F.2d 1500 (11th Cir. 1986); Smith v. Se. Stages, Inc., 479 F. Supp. 593, 594-95 (N.D. Ga. 1977)

4

stated the following: "Good information, like your on-time payment of credit card bills or your mortgage, can stay on your credit history forever." (Kimp Decl. Ex. pp. 47, 49). In emails exchanged between July 6 and 9, 2015, David Emery of Trans Union informed Plaintiff that positive information remains on her file for up to ten years from the date closed, Trans Union does not accept credit data directly from consumers, and Trans Union could only report information provided by creditors. (Tr. SMF ¶ 77; Kimp. Decl. ¶ 29, Ex. pp. 151, 153-176). Specifically, Trans Union responded that the mortgage records Plaintiff sought to add were paid off more than ten years ago. (Tr. SMF ¶ 78; Kimp. Decl. ¶ 30, Ex. p. 151). The Neiman, Saks, and Nordstrom accounts aged off because they were last paid or closed more than ten years ago. (Tr. SMF ¶ 79; Kimp. Decl. Ex. p. 154-155, 161). The Bloomingdale's account was removed by the creditor in 2013 and could only be reinserted by the creditor. (Id.).

### 2. Equifax

On July 1, 2015, Plaintiff emailed Equifax, requesting that Equifax add the Maryland and Illinois mortgages to her credit report. (Eq. SMF ¶ 46; Gobin Decl. ¶ 48). On July 6, 2015, Plaintiff asked Equifax to add her rental payment history to her credit report. (Eq. SMF ¶ 48; Gobin Decl. ¶ 50). On July 13, 2015, Equifax responded that Equifax reports paid as agreed accounts for up to ten years and cannot add old accounts that have been purged from Plaintiff's credit report. (Eq. SMF ¶ 49; Gobin Decl. ¶ 51). Plaintiff then requested that Equifax add several accounts to her credit report: Neiman, Saks, HHGregg, Peoples Energy, and Bloomingdales. (Eq. SMF ¶ 52; Gobin Decl. ¶

54. Ex. F).  Equifax responded that purged accounts could not be added back to the file, and that the length of time that data remains on her credit report is proprietary.  (Eq. SMF ¶ 53; Gobin Decl. ¶ 55, Exs. G, I).

### 3.   Experian

On July 1, 2015, Plaintiff emailed Experian, stating that her credit report was incomplete and requesting that Trans Union add the following accounts: three mortgages associated with properties in Maryland and Illinois; a Chase Bank account ending in 7586; and credit records with "Peoples Gas," Bloomingdales, HSBC Neiman Marcus, HSBC Saks Fifth Avenue, TD Auto Lease, Mercedes Benz Financial, Nordstrom, and MB Financial Services.  (Ex. SMF ¶¶ 51, 53; Ex. A-5 at 2).  The accounts Plaintiff listed were either never reported, had stopped reporting, or were reported as being in positive standing.  (Ex. SMF ¶ 54; Cave Decl. ¶ 13; Ex. A-5 at 31-36).  Experian responded on July 10, 2015, that it would not put information from private parties into its database.  (Ex. SMF ¶¶ 55-56; Cave Decl. ¶ 14; Ex. A-6 at 3).

### B.   <u>Discover, Chase, and Macy's Accounts</u>

### 1.   Facts Common to All Defendants

Plaintiff has, or had in 2012 and the beginning of 2013, credit accounts with Discover, Chase, and Macy's.  (<u>See</u> Pl. Dep. 124:18-125:3).  Beginning around July of 2012, Plaintiff was engaged in a legal dispute with HVM/ESA over amounts owed for lodging and ultimately was evicted.  (Pl. Dep. 76:5-18, 91:22-25, 126:15-25, 127:2-128:2).  Plaintiff refers to her dispute with HVM/ESA as part of a "fraud" that began in

6

Chicago before 2006 and has caused her to lose job opportunities and housing.  (E.g. Pl. Dep. 18:18-23, 77: 2-5, 96:6-21, 127:22-25, 131:3-5, 134:7-18, 173:4-9, 303:9-12, 315:6-316:14, 335:15-20; 355:4-5, 368:8-10; 399:24-25, 422:15-17; 437:9-24; 442:3-7; 466:23-467:2; 478:7-11; 486:3-8).  By December of 2012, Plaintiff had been staying in various hotels for more than 60 days and paying for those hotels using credit cards.  (Pl. Dep. 374:9-35).  As a result, Plaintiff was at or close to the limit of her credit cards. (Id.).  Around the beginning of 2013, Plaintiff was unable to pay her Discover, Chase, and Macy's bills.  (Pl. Dep. 121:14-25; 124:18-125:9, 126:3-14).  Plaintiff states that she was not surprised to see negative reporting associated with those accounts because she had been unable to meet her financial obligations due to the "HVM/ESA fraud." (Compl. ¶ 15; Pl. Dep. 121:4-22).

Plaintiff filed a lawsuit against HVM LLC, and in her prayer for relief asked the court to write a letter to her creditors explaining that HVM/ESA was responsible for her past due debt.  (Pl. Dep. 126:7-14; Doc. 139-10, p. 27).  On December 31, 2013, Plaintiff filed an unsworn Affidavit in her lawsuit against HVM, stating that she was delinquent on her Discover, Chase, and Macy's accounts and owed $14,000, $5,000, and $3,100, respectively.  (Pl. Dep. 133:4-134:16; Ex. 5, pp. 5, 11, 16).  Plaintiff agreed that the amounts she listed for Chase and Macy's were accurate, but questioned whether Discover should have allowed Sheraton Meadowlands and Enterprise to charge the amounts they did.  (Pl. Dep. 133:4-134:16, 136:4-13, 436:17-19).  Plaintiff alleged that Discover permitted her to use double the credit limit on her account. (Pl. Dep. 136:8-13,

433:2-9).  Plaintiff did not have any statements, invoices, or bills related to the Discover, Chase, or Macy's accounts at the time of her deposition, and had not searched for them because she did not view them as relevant to her lawsuit.  (Pl. Dep. 307:11-309:2-6). Plaintiff asked Defendants to investigate the Discover, Chase, and Macy's accounts. (Tr. SMF ¶ 83, Eq. SMF ¶ 55, Ex. SMF ¶ 61).  Plaintiff believed that Defendants' investigations should have looked into the facts underlying her fraud claims.  (Pl. Dep. 173: 4-9, 443:10-15 438:4-10; Gobin Decl. Ex. J, pp. 41-42).  Plaintiff asked Trans Union and Equifax to post a "statement of dispute of fraud" in a conspicuous manner on her credit reports because she was delinquent on her Discover, Chase, and Macy's accounts due to HVM/ESA's fraud.  (Pl. Dep. 172:21-25, 367:15-25).

## 2.    Trans Union

On July 9, 2015, Plaintiff sent an email to David Emery of Trans Union asking Trans Union to remove Discover from her credit report because it allowed Sheraton Meadowland to make charges "to almost 100%" over her line of credit and ignored her requests for assistance.  (Kimp Decl. Ex. pp. 154-155).  David Emery responded that the account would be disputed.  (Id. p. 153).  On July 21, 2015, Plaintiff emailed David Emery and asked for an update about her dispute against Discover.  (Id. pp. 190-191). In a document attached to her email, Plaintiff disputed the Discover, Chase, and Macy's accounts, and requested that Trans Union add the following dispute statement to her credit report in a conspicuous place:

8

**"FRAUD ALERT.** Due to fraud e.g., the most recent case, Peterson v. HVM/ESA Case No. 14-1137 is the cause, **ONLY** reason beginning in 2012 for Andrea Peterson lowered credit scores from historic, e.g., 2008 to 2012, 788, 791, 798 scores. This link, "https://www.dropbox.com/sh/gxjbt8cyuyfc4hw/AACoHcEVN0nsKyGK9UbdBdOba?dl=0" (Copy and paste) is to Andrea Peterson Credit Summary and factual indisputable exhibits, to include,mortgage history, credit reports, scores from 2008 to 2012, in support", and legal documents filed in the HVM/ESA case.

(Tr. SMF ¶¶ 83-85; Kimp Decl. Ex. 1, pp. 190-193).

In response, Trans Union added Plaintiff's consumer dispute statement to her credit report. (Tr. SMF ¶ 85, Kimp Decl. Ex. 1, p. 233; Pl. Dep. 395:7-24). Trans Union contacted Discover, Chase, and Macy's using an automated consumer dispute verification form (ACDV) with dispute code D2, indicating that Plaintiff claimed identity fraud or an account fraudulently opened. (Tr. SMF ¶¶ 27, 90, 92, 96, 94, 99, 101, 102, 108); Kimp Decl. ¶¶ 10, 38-41). Along with the ACDV, Trans Union sent the creditors a copy of Plaintiff's actual dispute letter as an image. (Tr. SMF ¶¶ 93, 97, 100, 103; Kimp Decl. ¶¶ 10, 38-41). Discover verified the account as reporting accurately, so Trans Union did not change the Discover tradeline. (Tr. SMF ¶¶ 98, 104; Kimp Decl. 40, Ex. pp. 216-222). Chase responded that the account ending 7586 did not belong to the consumer and directed Trans Union to delete it. (Tr. SMF ¶ 101; Kimp Decl. ¶, Ex. pp. 224-228). Chase verified the account ending 8981, but modified the closed date. (Tr. SMF ¶¶ 94-95; Kimp Decl. ¶39; Ex. pp. 209-214). Macy's verified and updated the account information, including adding the remark "AID," which stands for account information disputed by consumer. (Tr. SMF ¶¶ 90-91; Kimp Decl. ¶ 38, Ex. pp. 203-207). On August 19, 2015, Trans Union mailed the investigation results to Plaintiff.

(Tr. SMF ¶¶ 104-105; Kimp Decl. ¶ 42, Ex. pp. 229-242).

On August 27, 2015, Plaintiff sent David Emery an email responding to the investigation results, contending that the dispute statement was not in a conspicuous place, Discover should be removed, the removed Chase account should be reported, and she could not discern the updated information on the Macy's and Chase accounts. (Tr. SMF ¶ 107; Kimp Decl. ¶ 44, Ex. pp. 255-256). Plaintiff then emailed Trans Union again on September 8, 2015, to assert that the dispute statement was not conspicuously placed and argue that her credit report was still inaccurate. (Tr. SMF ¶ 109; Kimp Decl. ¶ 46, Ex. p. 274). Trans Union responded that her file was updated, Trans Union considered her disputes closed, and Trans Union would no longer respond to her emails. (Tr. SMF ¶ 110; Kimp Decl. ¶46, Ex. pp. 273-274).

### 3.   Equifax

On July 22, 2015, Plaintiff sent an email to Celestina Gobin (then Celestina Spencer) of Equifax, disputing the Discover, Chase, and Macy's accounts listed on her credit report. (Eq. SMF ¶¶ 24-27, 57; Gobin Decl. ¶¶ 31-34; Pl. Dep. 438:24-25, 439:2-3). Plaintiff also asked Equifax to add a dispute statement to her credit report identical to the one she sent to Trans Union. (Eq. SMF ¶ 55; Gobin Decl. ¶ 57). Equifax contacted Discover, Chase, and Macy's by ACDV and provided them with the information from Plaintiff. (Eq. SMF ¶ 56; Gobin Decl. ¶ 58). Chase and Macy's responded and verified the past due amounts; and Discover did not respond. (Eq. SMF ¶ 58; Gobin Decl. ¶ 60). Equifax removed the Discover, Chase, and Macy's accounts

10

from Plaintiff's credit file on or around August 31, 2015. (Eq. SMF ¶¶ 33, 59, 64; Gobin Decl. ¶¶ 36, 61, 66, Ex. M). Celestina Gobin informed Plaintiff that the consumer dispute statement provided by Plaintiff could not be added to her credit report because of the link and characters, and invited Plaintiff to resubmit the statement and explain the nature of the dispute in 100 words or less. (Eq. SMF ¶ 64; Gobin Decl. ¶ 66, Ex. M).

### 4. Experian

Experian did not receive a dispute directly from Plaintiff regarding her Discover, Chase, and Macy's accounts. (Ex. SMF ¶¶ 2, 62; Cave Decl. ¶ 13). Experian did, however, reinvestigate those accounts after receiving several CFPB complaints filed by Plaintiff in November 2015. (Ex. SMF ¶¶ 60-61; Cave Decl. ¶¶ 17-18; Pl. Dep. Exs. 15-16). Experian sent ACDV forms to Discover, Chase, and Macy's, and each creditor verified that Plaintiff's account was past due and charged off. (Ex. SMF ¶¶ 61,63-66; Cave Decl. ¶ 19; Ex. A-4). On November 19, 2015, Experian mailed Plaintiff a description of its dispute procedures. (Ex. SMF ¶ 67; Cave Decl. ¶ 20; Ex. A-7). On November 23, 2015, Experian mailed "Dispute Results" to Plaintiff, which showed all three accounts as "Updated" and provided the names, addresses, and phone numbers of the creditors. (Ex. SMF ¶¶ 68-69; Cave Decl. ¶20; Ex. A-8). Plaintiff conceded that Experian's reporting of her Chase and Discover accounts as paid through February 2013 was accurate. (Pl. Dep. 271:8-273:15). Plaintiff disagreed that with Experian's reporting that her Macy's account was 30 days delinquent in December 2012, but agreed

it was accurate from March 2013 onward.  (Pl. Dep. 273:16-274:13).  Plaintiff could not identify any documents showing she made a payment to Macy's in December 2012, but observed it was strange that she paid other creditors and not Macy's.  (Pl. Dep. 275:13-276:22).

Experian did not receive a request from Plaintiff to add a dispute statement.  (Ex. SMF ¶ 70; Cave Decl. ¶ 21; Ex. A-2).  Plaintiff sent a number of emails about her concerns directly to individuals with email addresses that ended with "@experian.com" between July 1 and September 5, 2015, but there is no evidence Plaintiff ever received a response from any of those email addresses.  (Pl. Dep. Exs. 9-14).  One of those emails, dated July 22, 2015, asked Experian to add a dispute statement to Plaintiff's credit report.  (Pl. Dep. Ex. 12).

### C. MARS/Alamo/Enterprise Account

#### 1. Facts Common to All Defendants

The account Plaintiff refers to as "Enterprise" or "Alamo" is reported as MARS, Inc. on Plaintiff's Trans Union and Equifax credit reports.  (Pl. Dep. 387:3-16).  Plaintiff alleges she does not owe any money to Enterprise because the charges were based on fraud and a "set up."  (Pl. Dep. 368:8-10, 433:16-17).  After Plaintiff was told she "had to get out," her son offered to let Plaintiff live with him in Chicago.  (Pl. Dep. 441:11-442:3).  In order to get there, Plaintiff called a senior manager at Enterprise and proposed that she would not file a legal action against Enterprise for its "fraud and collusion in the fraud" if Enterprise gave her a car.  (Pl. Dep. 442:3-7).  According to

12

Plaintiff, the senior manager she spoke with at Enterprise, Mr. O'Donnell, said Enterprise would give her the car, but she had to go to Philadelphia to get it. (Pl. Dep. 442:20-443:2). Enterprise did not tell her how long she was allowed to keep the car. (Pl. Dep. 447:8-18).

MARS's records include a rental agreement stating that Andrea Peterson rented a Nissan Altima from Alamo, which was to be picked up on November 15, 2012, in Philadelphia and dropped off on November 18, 2012, in Chicago. (Doc. 139-16). On April 13, 2015, Plaintiff was charged in Cobb County, Georgia with theft by receiving stolen property. (Pl. Dep. Ex. 23). The criminal case was related to Enterprise, and the property Plaintiff was accused of unlawfully retaining was a Nissan Altima. (Pl. Dep. 449:3-8, Ex. 23). During her deposition, Plaintiff stated the case was still being litigated. (Pl. Dep. 449:17-450:15). Plaintiff wanted Trans Union and Equifax to investigate the underlying facts of the MARS account, including the reason Enterprise's agent told her, "You're not winning any of your legal cases." (Pl. Dep. 384:14-385:5).

### 2.    Trans Union

Plaintiff emailed David Emery on July 6, 2015, disputing the "MARS, for Alamo (Enterprise) Rent a Car" tradeline. (Tr. SMF ¶ 74; Kimp Decl. ¶ 26, Ex. pp. 123-124). Plaintiff asked for the tradeline to be removed because "Enterprise agreed to give me a car in exchange for my agreement that I would not pursue/file legal action against Enterprise for Fraud, Collusion Enterprise participated with persons/entities associated/against me." (Id.). Trans Union deleted the MARS, Inc. tradeline because

13

MARS did not timely respond to Trans Union's ACDV.  (Tr. SMF ¶ 87; Kimp. Decl. ¶¶ 28, 36, Ex. pp. 275-278).  On August 6, 2015, Plaintiff emailed requesting an update on the status of the "Enterprise" dispute.  (Tr. SMF ¶ 88; Kimp. Decl. 37, Ex. pp. 199-200).  Trans Union responded that the account had been removed and mailed a credit disclosure to Plaintiff on August 6, 2015.  (Tr. SMF ¶ 89; Kimp Decl. ¶ 37, Ex. pp. 281-283).  Plaintiff wanted Trans Union's investigation of the MARS account to look into Plaintiff's legal cases because Enterprise's agent told her "You're not winning any of your legal cases."  (Pl. Dep. 381:3-383:23).

### 3.   Equifax

MARS, Inc. reported a collection account to Equifax with a balance of $440 that named Vanguard Alamo Rent a Car as the underlying creditor.  (Eq. SMF ¶ 36-37; Gobin Decl. ¶ 37-38).  On June 9, 2015, Plaintiff sent an email to Celestina Gobin at Equifax, disputing the MARS account and stating "I do not owe Enterprise/Alamo any money.  Enterprise agreed to give me a car in exchange for my agreement that I would not pursue/file legal action against Enterprise for Fraud, Collusion Enterprise participated with persons/entities associated/against me."  (Eq. SMF ¶ 40; Gobin Decl. ¶ 42, Ex. A).  Plaintiff did not provide any documents to support her dispute.  (Eq. SMF ¶ 41; Gobin Decl. ¶ 43).  Celestina Gobin responded on June 10, 2015, informing Plaintiff that an investigation was underway and recommending that Plaintiff contact MARS Inc. and Mr. O'Donnell about her dispute.  (Eq. SMF ¶ 42; Gobin Decl. ¶ 44; Ex. B).  Equifax then contacted MARS by ACDV, and gave MARS the information Equifax

14

received from Plaintiff.  (Eq. SMF ¶ 43; Gobin Decl. ¶ 45).  MARS responded on July 1, 2015, and verified that the collection account had a past due balance of $440.  (Eq. SMF ¶ 44; Gobin Decl. ¶ 46).  Equifax updated the MARS tradeline to include the following comment: "CUSTOMER DISPUTES THIS ACCOUNT INFORMATION." (Eq. SMF ¶ 45; Gobin Decl. ¶ 47).  Around July 3, 2015, Equifax provided Plaintiff with the reinvestigation results of the MARS account.  (Eq. SMF ¶ 47, Gobin Decl. ¶ 49).

On July 13, 2015, Celestina Gobin reiterated that the MARS account had been verified and would remain on Plaintiff's credit file unless Equifax received information indicating it was inaccurate.  (Eq. SMF ¶ 51; Gobin Decl. ¶ 53, Ex. E).  Celestina Gobin sent another email to Plaintiff on July 2, 2015, responding to Plaintiff's inquiries and explaining that the MARS account was not removed because MARS validated the debt. (Eq. SMF ¶ 54, Gobin Decl. ¶ 56, Ex. H).  The email also informed Plaintiff that she could add a fraud alert or consumer statement to her file.  (Id.).

On July 22, 2015, Plaintiff again disputed the MARS account and requested a dispute statement be added to her credit report.  (Eq. SMF ¶ 55; Gobin Decl. ¶ 57).  On July 29, 2015, Celestina Gobin emailed Plaintiff to inform her that the consumer dispute statement was added to the MARS collection account.  (Eq. SMF ¶ 60; Gobin Decl. ¶ 62, Ex. I).  Plaintiff then responded by email with additional facts about the MARS account, alleging collusion to block her from housing, run her out of money, and force her to allow use of her copyright, and insisting that the "investigation must include ALL of the foregoing underlying facts including its association, collusion, part of attempts

15

to force me to leave Atlanta, or force me to be a resident of Cobb County." (Eq. SMF ¶ 61; Gobin Decl. ¶ 63, Ex. J). Equifax investigated again, and Celestina Gobin emailed Plaintiff on August 7, 2015, that Equifax verified the tradeline was reported correctly. (Eq. SMF ¶ 62; Gobin Decl ¶ 64, Ex. K).

On August 10, 2015, Plaintiff asked if "Enterprise" posted the dispute statement, if the fraud alert had been added, and posed additional questions about the outcome of the reinvestigation. (Eq. SMF ¶ 63; Gobin Decl. ¶ 65, Ex. L). Christina Gobin replied on August 11, 2015, verifying that the dispute statement and fraud alert had been added, and responding to Plaintiff's other inquiries about the reinvestigation. (Id.). After several subsequent emails, Christina Gobin informed Plaintiff on September 3, 2015, that without further evidence, the MARS account will remain on Plaintiff's file because it had been verified. (Eq. SMF ¶¶ 64-66; Gobin Decl. ¶¶ 66-68, Exs. M-O). Plaintiff sought to have Equifax reinvestigate the underlying fraud, acquire information, and provide that information to Plaintiff. (Pl. Dep. 445:14-446:22).

### 4.    Experian

Plaintiff mentions that she disputed the MARS account with each of the Defendants, but the email she attached related to the "Enterprise dispute" is only addressed to Trans Union and Equifax. (See Compl. Ex. H). There is no mention of the MARS account in copies of the emails Plaintiff sent to individuals with email addresses ending in @experian.com. (See Pl. Dep. Exs. 9-14). In Plaintiff's deposition, she only states that she asked Trans Union and Enterprise to do a reinvestigation of the facts

underlying the MARS account.  (Pl. Dep. 384:14-386:6).  Nor does the Enterprise account appear on the Experian credit report dated July 10, 2015.  (Pl. Dep. Ex. 8).

## II.    LEGAL ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of asserting the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990).  The movant is not required, however, to negate his opponent's claim; the movant may discharge his burden by merely "'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating specific facts showing that there is a genuine disputed issue for trial; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. Id. at 324 (quoting Fed. R. Civ. P. 56(c)(1)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

17

judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is material when it is identified as such by the controlling substantive law.  <u>Id.</u> at 248.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." <u>Anderson</u>, 477 U.S. at 249-50.

### B.   **Plaintiff's FCRA Section 1681e(b) and Section 1681i Claims**

Plaintiff contends that Defendants violated Section 1681e(b) of the FCRA because they failed to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of her credit reports.  Plaintiff further contends that Defendants violated Section 1681i of the FCRA by failing to delete inaccurate information from her credit file after receiving notice of the inaccuracies, failing to conduct reasonable reinvestigations, failing to conspicuously post her consumer dispute, and failing to maintain reasonable procedures to verify disputed information in her credit file.  Defendants contend that both Plaintiff's Section 1681e(b) and Section 1681i claims fail because they did not report any of the disputed accounts inaccurately.

In order to establish Plaintiff's Section 1681e(b) and Section 1681i claims,

18

Plaintiff must ultimately show that Defendants maintained inaccurate information about the disputed accounts in her credit file and reported the information inaccurately. Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting. Collins v. Experian Info. Sys., 775 F.3d 1330, 1332 (11th Cir. 2015). "The FCRA creates a private right of action against consumer reporting agencies for the negligent, or willful violation of any duty imposed under the statute." 15 U.S.C. §§ 1681n, 1681o; Collins, 775 F.3d at 1333. The Fair Credit Reporting Act requires that "[w]henever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

In order to establish a prima facie violation of Section 1681e(b), the consumer must present evidence tending to show that the consumer reporting agency ("CRA") prepared a report that contained inaccurate information. Ray v. Equifax Info. Servs., 327 F. App'x 819, 826 (11th Cir. 2009); Enwonwu v. Trans Union, LLC, 164 F. App'x 914, 918 (11th Cir. 2006); Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991). If a consumer fails to meet the initial burden of proving an inaccuracy, as a matter of law, that consumer does not establish a violation of Section 1681e(b), and the court need not further inquire into the reasonableness of the procedures adopted by the CRA. Cahlin, 936 F.2d at 1156. If evidence is presented that does tend to show that a report contained inaccurate information, the agency can avoid liability by showing that its inaccuracy was generated by following reasonable

19

procedures – a question that in most cases is resolved by a jury.  <u>Cahlin</u>, 936 F.2d at 1156; <u>Jackson v. Equifax Info. Servs.</u>,  167 F. App'x 144, 146 (11th Cir. 2006); <u>Enwonwu</u>, 164 F. App'x at 918.

Likewise,  in order to establish a violation of Section 1681i, Plaintiff must also prove inaccuracy.  Section 1681i(a) imposes on CRAs the duty to make reasonable efforts to investigate and correct inaccurate or incomplete information stored in their credit files when brought to their attention by the consumer.  <u>Collins</u>, 775 F.3d at 1334-35; <u>Cahlin</u>, 936 F.2d at 1160.  Under this section, "if the completeness or accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the agency directly . . . the agency shall . . . conduct a reasonable investigation to determine whether the disputed information is inaccurate . . . ."  15 U.S.C. § 1681i(a)(1)(A).  A CRA violates Section 1681i(a) if a consumer notifies the agency that there is inaccurate information contained in his file and the agency does not conduct a reasonable reinvestigation into the matter.  <u>Collins</u>, 775 F.3d at 1335.  In order for a consumer to establish a claim pursuant to Section 1681i, the consumer must first show that there was reported information on his or her credit report that was inaccurate or incomplete.  <u>Cahlin</u>, 936 F.2d at 1160 (explaining that when a consumer brings a claim for violation of Section 1681i, the court "is generally called upon to determine whether the [CRA] could have discovered an error in a particular report through a reasonable investigation" and therefore a Section 1681i claim "is properly raised when a particular credit report contains a factual deficiency or error that

20

could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry"); Rumbough v. Experian Info. Solutions, No. 6:12-CV-811-Orl-22DAB, 2014 WL 11427967, at *8 (M.D. Fla. Jan. 9, 2014), aff'd 626 F. App'x 224 (11th Cir. 2015); Lazarre v. JP Morgan Chase Bank, N.A., 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011); see also DeAndrade v. Trans Union LLC, 523 F.3d 61, 67 (1st Cir. 2008) (requiring plaintiffs to show that reported information is factually inaccurate to bring a claim under Section 1681i).  If there is no genuine issue of fact as to the accuracy of the report, then a Section 1681i(a) claim fails as a matter of law. DeAndrade, 523 F.3d at 68.

[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the [CRA's] procedures is necessary." Smith v. E-Backgroundchecks.com, Inc., 81 F. Supp. 3d 1342, 1357 (N.D. Ga. 2015) (quoting Adams v. Nat'l Eng'g Serv. Corp., 620 F. Supp.2d 319, 330 (D. Conn. 2009)).  Courts have split over the definition of "maximum possible accuracy," which is the requirement imposed by 15 U.S.C. § 1681e.  Pedro v. Equifax, 868 F.3d 1275, 1281 (11th Cir. 2017).  The Eleventh Circuit recently opined that the "better interpretation" of maximum possible accuracy requires credit reports to be both technically accurate and not misleading.  Id.  Even under this relatively high standard, Plaintiff has not met her burden of raising a genuine issue of material fact as to the accuracy of her credit reports.

21

1.    <u>Request to Add Accounts</u>

Plaintiff asked Defendants to add accounts to her credit file that were not being reported, including old credit accounts, accounts removed by furnishers, a history of rental payments, and satisfied mortgages.  (Tr. SMF ¶¶ 71-75, 75; Eq. SMF ¶¶ 46, 38, 52; Ex. SMF ¶¶ 53-54).  The FCRA does not require a consumer reporting agency to add new accounts at a consumer's request; the FCRA only allows consumers to dispute the accuracy or completeness of existing information in the credit file.  <u>Davis v. Equifax Info. Servs.</u>, 346 F. Supp.2d 1164, 1171-72 (N.D. Ala. 2004); <u>Aclys Int'l, LLC v. Equifax, Inc.</u>, 2010 WL 1816248, at *3 (D. Utah May 5, 2010), <u>aff'd on other grounds Aclys Int'l v. Equifax</u>, 438 F. App'x 689 (10th Cir. 2011); <u>see</u> <u>Hill v. Equifax Info. Servs.</u>, 2013 Wl 6241043, at *3 (M.D. N.C. Dec. 3, 2013) (finding that Section 1681s-2(b) does not impose a duty on furnishers where the disputed information has not been provided to the credit reporting agencies).  The FTC's interpretation of the FCRA does not require CRAs to add unreported accounts:

> B.  <u>No right to add new accounts to file</u>.  A CRA is not required to create new files on consumers for whom it has no file, nor is it required to add information about accounts not reflected in an existing file, because consumers may dispute only the completeness or accuracy of particular items of information in the file.  A CRA may charge fees for creating or adding items to files on consumers at their request, or for other services not required by the FCRA that are requested by consumers.

Federal Trade Comm'n, <u>40 Years of Experience with the Fair Credit Reporting Act</u>: An

FTC Staff Report with Summary of Interpretations 76 (2011).[2]   While FTC staff commentary is not binding, the Court finds it persuasive and consistent with the plain language of the FCRA.  See Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 696-97, n.12 (N.D. Ga. 2012) (finding FTC staff commentary instructive because the FTC is the administrative agency charged with enforcing the FCRA); Williams v. First Advantage LNS Screening Sol., 155 F. Supp.3d 1233, 1244-45 (N.D. Ga. 2015) (weighing the FTC staff commentary when interpreting an FCRA provision).

The FCRA's statutory scheme and plain language support the FTC's interpretation.  Section 1681c lists information that CRAs must exclude from consumer reports, as well as information that CRAs are required to disclose.  15 U.S.C. § 1681c(a) and (d).   CRAs are only required to disclose: (1) the chapter of bankruptcy, if a bankruptcy appears on the consumer report, and (2) that the number of enquiries is a key factor adversely affecting a credit score, if that is indeed the case.  15 U.S.C. § 1681c(d). No other provision contained in the FCRA requires CRAs to report any particular information.  In addition, the dispute procedures of 15 U.S.C. § 1681i are triggered when the consumer disputes "the completeness or accuracy of any item of **information contained in a consumer's file** at a consumer reporting agency . . ."  15 U.S.C. § 1681i(a)(1)(A) (emphasis added).  The only portion of 15 U.S.C. § 1681i that addresses adding information permits the reinsertion of information that was previously removed

---

[2] The 2011 FTC Staff Report is available online at the following website: https://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations.

for being inaccurate, incomplete, or unverifiable only if the furnisher certifies that the information is complete or accurate.  15 U.S.C. § 1681i(a)(5)(B)(i).  Thus, the FCRA does not mandate the reporting of all credit extended to a consumer, nor does it obligate CRAs to report information received directly from consumers.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's FCRA claims based on their refusal to add aged-off credit accounts, accounts removed by the furnisher, or credit accounts reported by Plaintiff.

### 2. Discover, Chase, and Macy's Accounts

Plaintiff concedes that her Discover, Chase, and Macy's accounts were delinquent in her Complaint and deposition.  (Compl. ¶ 15; Pl. Dep. 121:14-25; 124:18-125:9, 126:3-14).  Plaintiff, however, blames her delinquency on a legal dispute with HVM/ESA.  (Compl. ¶ 15; Pl. Dep. 121:4-22).  Although Plaintiff is currently litigating a case against HVM/ESA related to her eviction, Plaintiff has not produced any evidence showing that HVM/ESA is legally responsible for paying her other debts.  (Pl. Dep. 126:15-22).  While the cost of litigation may explain why Plaintiff did not have the resources to pay other bills, it does not render the credit reporting of her Discover, Chase, and Macy's accounts inaccurate.  On the contrary, Plaintiff admits it is technically accurate that her Discover, Chase, and Macy's accounts were delinquent around the beginning of 2013.  Nor was it misleading to report those accounts as delinquent.  If Plaintiff's definition of accuracy were adopted, every tradeline that did not contain an explanation for why an account became delinquent – such as other

expenses, income loss, illness, or divorce – would be deemed inaccurate under the FCRA.  Further, at Plaintiff's request, Trans Union and Equifax published or were willing to add a consumer dispute statement to Plaintiff's credit reports; and Experian did not receive such a request from Plaintiff.  (Kimp Decl. Ex. 1, p. 233; Pl. Dep. 395:7-24; Gobin Decl. ¶ 66, Ex. M; Cave Decl. ¶ 21; Ex. A-2).

During her deposition, Plaintiff disputed the accuracy of Experian's notation that her Macy's account was 30 days delinquent in December 2012, but agreed that the reporting was accurate from March 2013 onward.  (Pl. Dep. 273:16-274:13).  Plaintiff seemed to believe that her account could not be accurately paid as agreed in November and 30 days behind in December.  (Pl. Dep. 276:3-22).  Plaintiff also found it unlikely that she paid other bills in December, but not Macy's.  (Pl. Dep. 275: 13-16).  Plaintiff did not produce any documentation showing that her Macy's account was current in December of 2012, and her mere speculation is insufficient to survive summary judgment.  Shuler v. Ingram & Assocs., 441 F. App'x 712, 715 (11th Cir. 2011) ("Speculation or conjecture cannot create a genuine issue of material fact.").

Plaintiff also took issue with Discover for allowing her balance to exceed her credit limit, but did not allege that the balance was inaccurate.  (Pl. Dep. 136:4-13).  Additionally, Plaintiff complained that Trans Union removed the Chase account ending in 7586 from her credit report in response to her dispute.  (Tr. SMF ¶ 107; Kimp Decl. ¶ 44, Ex. pp. 255-256).  Deleting an account, however, in response to a dispute is specifically authorized by the FCRA.  If a CRA determines the disputed information is

25

inaccurate, incomplete, or unverifiable, the CRA **shall** delete the information and notify the furnisher of the deletion.  15 U.S.C. § 1681(a)(5)(A)(emphasis added); see e.g. Davis, 346 F. Supp.2d at 1171-72 (finding it reasonable to delete a mortgage account from the plaintiff's credit file when the mortgage company failed to respond to the CRA's inquiry).  The deleted information cannot be reinserted without the furnisher certifying its accuracy.  15 U.S.C. § 1681(a)(5)(B).  Trans Union's action in deleting the Chase account did not violate the FCRA; on the contrary, it clearly complied with the procedures laid out in 15 U.S.C. § 1681a.  For the aforementioned reasons, Plaintiff has not shown a genuine issue of any material fact concerning the accuracy of her Discover, Chase, and Macy's tradelines.

### 3.   MARS/Alamo/Enterprise Account

Plaintiff also failed to show a genuine dispute of material fact regarding the accuracy of her MARS tradelines.  Plaintiff alleges that Enterprise agreed to give her a car in exchange for her agreement not to sue them.  (Pl. Dep. 442:3-443:2).  Plaintiff admitted that she did not discuss with Enterprise how long she could keep the car.  (Pl. Dep. 447:13-17).  Moreover, Plaintiff has not provided any documentation in support of her claim, such as a settlement agreement, rental agreement, or car title.  On the other hand, Defendants have provided a rental agreement between Plaintiff and Alamo, wherein Plaintiff agreed to rent a Nissan Altima for three days, as well documents from a Cobb County criminal case charging Plaintiff with theft for unlawfully retaining a Nissan Altima.  (Doc. 139-16; Pl's Dep. Ex. 25).  Despite Plaintiff's bare assertion that

she does not owe money to MARS, the documents suggest that Enterprise/Alamo did not agree to give Plaintiff a car for free for an undefined period of time. Even viewing the facts in a light most favorable to Plaintiff, such vague and unsupported allegations are insufficient to create a genuine issue of material fact. As a result, Defendants are entitled to summary judgment on Plaintiff's claims regarding the MARS accounts.

**C.     Plaintiff's FCRA Section 1681s-2(a)(3) Claim**

To the extent Plaintiff brings claims under Section 1681s-2(a)(3) against Defendants, the claims are without merit. (Compl. ¶ 104). Section 1681s-2 applies to furnishers of information, not CRAs. 15 U.S.C. § 1681s-2; see Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312 (11th Cir. 2018) (describing Section 1681s-2 as the only section creating a private right of action under the FCRA against furnishers); Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1301-02 (11th Cir. 2016) (holding that § 1681s-2 requires furnishers to conduct a "reasonable investigation"); Chipka v. Bank of America, 355 F. App'x 380, 382-83 (11th Cir. 2008) ("Pursuant to § 1681s-2, the FCRA also imposes certain responsibilities on persons who furnish information to consumer reporting agencies."). Further, Section 1681s-2(a) is not privately enforceable. 15 U.S.C. § 1681(c); Felts, 893 F. 3d at 1312; Chipka, 355 F. App'x 830 at 383. Accordingly, summary judgment should be **GRANTED** as to Plaintiff's FCRA claims.

**CONCLUSION**

For the reasons explained above, Defendants' Motions for Summary Judgment

27

should be **GRANTED**.  (Doc. 139, 140, 141).

      **SO REPORTED AND RECOMMENDED** this   27   day of December, 2018.

_____
LINDA T. WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

28